# IN THE UNITED STATES DISTRICT COURT FOR THE
## WESTERN DISTRICT OF MISSOURI
### CENTRAL DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 10-04009-01-CR-C-WAK |
| | ) | |
| MIDWEST CONTAINER | ) | |
| RECONDITIONING, LLC, | ) | |
| | ) | |
| Defendant. | ) | |

## PLEA AGREEMENT

Pursuant to Rule 11(c)(1)(B) of the Federal Rules of Criminal Procedure, the parties described below have entered into the following plea agreement:

1. **The Parties.** The parties to this agreement are the United States Attorney's Office for the Western District of Missouri (otherwise referred to as "the Government" or "the United States"), represented by Beth Phillips, United States Attorney, and Lawrence E. Miller, Assistant United States Attorney, and the defendant, Midwest Container Reconditioning ("the defendant"), represented by Jean Paul Bradshaw and David A. Shorr.

The defendant understands and agrees that this plea agreement is only between it and the United States Attorney for the Western District of Missouri, and that it does not bind any other federal, state or local prosecution authority, or any other government agency, unless otherwise specified in this agreement.

2. **Defendant's Guilty Plea**. The defendant agrees to and hereby does waive indictment and plead guilty to an information, charging it with a violation of 33 U.S.C. § 1319(c)(1)(A). By entering into this plea agreement, the defendant admits that it negligently committed this offense, and is, in fact, guilty of this offense.

3. **Factual Basis for Guilty Plea**. The parties agree that the facts constituting the offense to which the defendant is pleading guilty are as follows:

> The Federal Water Pollution Control Act a/k/a "Clean Water Act" (CWA), is the primary Federal statute addressing water pollution. Its stated purpose is the "restoration and maintenance of the chemical, physical, and biological integrity of the Nation's waters." Among other things, the Act regulates discharges of wastewater into publicly owned sewer systems. Such discharges are federally regulated because sewage treatment plants, referred to in the statute as "publicly owned treatment works" (POTWs), are major potential sources of water pollutants, and because such plants represent enormous investments of public funds.

> A sewage treatment plant receives, via a sewer system, wastewater produced by the area served by the POTW. This wastewater is referred to as influent. Through various processes, the POTW separates water from the many organic and inorganic solid contaminants contained in that influent. Those solids are eventually concentrated into a sludge. The water is treated with chlorine or ultraviolet light and is then discharged into a body of water. This discharge is referred to as effluent, and is a "permitted" discharge by a POTW.

> Although POTWs are often large and complex, these plants are not designed to treat every waste discharged to the system. Some wastes may disrupt the operation of a POTW, may physically damage the system, or may cause the POTW to violate its discharge permit. Untreatable waste causes two general types of problems at POTWs:

2

untreatable waste that simply passes through the POTW because the plant is not designed to treat such a waste, and untreatable waste of such a nature that causes interference to the system resulting in overload or failure at the POTW. *A POTW does not include only the plant itself; it also includes the "sewers, pipes, and other conveyances" when they are connected to the plant*. 40 C.F.R. § 403.3(q) (emphasis added).

The CWA directed the United States Environmental Protection Agency (EPA) to promulgate regulations establishing pretreatment standards for the introduction of pollutants into POTWs "which are not susceptible to treatment by such [POTW] or which would interfere with the operation of such [POTW]." 33 U.S.C. § 1317(b)(1). The term "pretreatment" includes the reduction, elimination, or alteration of the pollutant content of wastewater prior to introducing such wastewater into a POTW. 40 C.F.R. § 403.3(s).

In order to achieve the elimination of pollutant contents in the wastewater, EPA promulgated regulations identifying certain pollutants which are specifically prohibited from introduction to a POTW. These pollutants are set forth at 40 CFR 403.5. The CWA authorizes the EPA to delegate to a state the authority to administer its own pretreatment permitting program. 33 U.S.C. § 1342(b). To receive pretreatment delegation, the state must have sufficient authority to issue state permits that "insure" that POTWs will comply with the requirements of 33 U.S.C. § 1317. In addition, the state program must require inspections, monitoring, and reporting to the same extent required in the CWA. Specifically, 33 U.S.C. § 1342(b)(8) requires that the state "insure that any permit for a discharge from a [POTW] includes conditions to require the identification in terms of character and volume of pollutants of any significant source including pollutants subject to pretreatment standards . . . and a program to assure compliance with such pretreatment standards".

The Missouri Department of Natural Resources ("MDNR") is the state agency with the authority to administer the federal pretreatment program in Missouri pursuant to 33 U.S.C. § 1342, implementing regulations. As such, MDNR is the "Approval Authority" as defined by 40 C.F.R. § 403.3(c). MDNR has further delegated the authority to

3

issue pretreatment permits and promulgate regulations for its own POTW to the City of Columbia, Missouri.[1]

Federal delegation of pretreatment permitting authority to a state under 33 U.S.C. § 1342(b) has no effect on Federal enforcement powers under 33 U.S.C. § 1319. 33 U.S.C. § 1342(i). Thus, EPA retains authority to enforce pretreatment programs in the State of Missouri. The CWA provides criminal penalties for any person who negligently or knowingly violates either the Federal pretreatment standards (33 U.S.C. § 1317), or the requirements of a local POTW pretreatment program approved under 33 U.S.C. § 1342(b)(8) by an authorized State. 33 U.S.C. Sections 1319(c)(1) and (c)(2).

Federal regulations promulgated pursuant to the Clean Water Act prohibit the introduction of pollutants into a POTW containing a pH less than 5. 40 CFR 403.5(b)(2). The City of Columbia, Missouri prohibits the introduction of pollutants into a city POTW containing a pH of less than 5.5 or greater than 9.5. Chapter 22, Article VI, Section 22-215. It should also be noted that the City of Columbia prohibits any person from placing or depositing or causing to be deposited or place into any sewer any...industrial waste without a discharge permit. Chapter 22, Article VI (22-216.1 and 22-216.3) Like the other regulations promulgated by the City of Columbia regarding its POTW, failure to comply with this regulation is a violation of the CWA.

The Clean Water act provides criminal penalties for any person who negligently or knowingly violates a requirement imposed as part of an approved pretreatment program.

Midwest Container Reconditioning, Inc. is a Missouri Corporation. Midwest Container, Inc. is a drum reconditioning company located in Missouri and Oklahoma. MCR operates at three locations, specifically 3074 County Road 257, Fulton, Missouri, 3609 Mojave Court, Columbia, Missouri, and 6610 New Supula Road, Tulsa, Oklahoma.

On December 18, 2008, EPA Criminal Investigation Division ("CID") executed a search warrant of the MCR Fulton and

---

[1]Local limits were approved by the MDNR in 1990. On June 21, 1991, the city adopted the Sewer Use Ordinance under Chapter 22, Article VI.

4

Mojave Court facilities. During the course of the warrant, several employees were interviewed regarding the operations at both facilities and discharge procedures. The MCR Mojave Court discharge processes were confirmed by other employees including Mr. Matt Sommer, Site Supervisor, MCR Mojave Court.

According to Mr. Sommer, Mr. Hopper, the owner of MCR visited the Mojave Court facility on his way to the Fulton facility. Mr. Sommer explained that 55 gallon plastic drums and totes were brought to Mojave Court from Fulton after being sorted. The MCR Fulton facility mostly processed steel drums. Mr. Sommer confirmed that wastewater from the process tanks did drain to the floor drains but that a burlap sack of soda ash placed in the tank was supposed to maintain the pH. Additionally, Mr. Sommer confirmed that up until 2-3 months prior to the warrant, the Fulton facility would haul waste totes to the Mojave Court facility for disposal to the floor drains. However, Mr. Sommer indicated that the driver was supposed to check the pH of the discharge and adjust it as necessary.

On January 29, 2009, SA Oesterreich interviewed Mr. Steve Hopper regarding the disposal of the caustic waste water from the MCR facilities. Mr. Hopper is the owner and organizer of MCR. MCR is a Limited Liability Missouri Company organized and registered with the State of Missouri on or about December 5, 1997. During the interview Mr. Hopper stated that caustic waste water was to be disposed of only at the Lemone Ave MCR facility and MCR Tulsa. However, Mr. Hopper admitted that the MCR Mojave Court poly drum washing line was set up to have the first wash station drain into the sewer after passing through a caustic soda bag. Mr. Hopper admitted that this system was not a standard way industry would effectively treat for pH in a discharge. Later that day upon further investigation by Mr. Hopper, he admitted that at least two caustic water totes from MCR Fulton would have been disposed at the MCR Mojave Court facility. Based on records obtained by SA Oesterreich from the City of Sapulpa Pretreatment Program, Mr. Hopper has experience and knowledge in industrial pretreatment requirements. Specifically, Mr. Hopper had previously applied for a permit to discharge industrial wastewater to the Sapulpa Publicly Owned Treatment Works ("POTW"). The City of Sapulpa issued MCR Tulsa discharge permit IU-20100 on February 19, 2007. Mr. Hopper did not have a

5

discharge permit from the City of Columbia and had not obtained a city business license for the operation of his business at the Mojave Court location.

In August, 2009, the National Enforcement Investigations Center ("NEIC") issued their preliminary criminal technical report for the samples collected during the search warrant. Based on the results, fourteen samples collected during the search warrant from the sewer discharge from MCR Mojave Court were outside the permissible range for pH. Specifically, the USEPA Lab tested samples collected on December 17, 2009 registered pHs of 3.6, 3.3, 9.6, 9.6, 12.4, 12.7, 3.4, 3.2, 12.6, and 12.4. Readings from December 18, 2009 samples registered pHs of 3.1, 3.4, 4.2, and 4.0.

4. **Use of Factual Admissions**. The defendant acknowledges, understands and agrees that the admissions contained in paragraph 3 and other portions of this plea agreement will be used for the purpose of determining its guilt and appropriate fine to be determined by the Court. The defendant acknowledges, understands and agrees that the other uncharged related criminal activity, may be considered as "relevant conduct" in calculating the appropriate fine.

5. **Statutory Penalties**. The defendant understands that, upon its plea of guilty to the information charging it with negligent unlawful discharge of pollutants, the maximum penalty the Court may impose is a fine of not less than $2,500 per day, and not more than $25,000 per day of violation, and a $25 mandatory special assessment which must be paid in full at the time of sentencing. The defendant further understands that this offense is a Class A misdemeanor.

Case 2:10-cr-04009-WAK   Document 2   Filed 03/16/10   Page 6 of 18

6. **Sentencing Procedures.** The defendant acknowledges, understands and agrees to the following:

    a. in determining the appropriate sentence, the Court will consult and consider the United States Sentencing Guidelines promulgated by the United States Sentencing Commission; these Guidelines, however, are advisory in nature. The defendant understands that the United States Sentencing Guidelines relating to the sentencing of organizations does not apply to the imposition of fines for environmental crimes. See U.S.S.G. § 8C2.1 (Commentary-Background);

    b. the Court may impose a term of probation of up to five (5) years; that the Court must impose a period of probation of at least one (1) year if probation is imposed; a fine of not less than $2,500 per day and not more than $25,000 per day. The Court may also impose restitution and costs of prosecution;

    c. the Court is not bound by any recommendation regarding the fine to be imposed; and

    d. the defendant may not withdraw its guilty plea solely because of the nature of the sentence imposed by the Court.

7. **Government's Agreements.** Based upon evidence in its possession at this time, the United States Attorney's Office for the Western District of Missouri, as part of this plea agreement, agrees not to bring any additional charges against the defendant for any federal criminal offenses related to the knowing unlawful discharge of pollutants for which it has venue and which arose out of the defendant's conduct described above.

The defendant understands that this plea agreement does not foreclose any prosecution for an act of murder or attempted murder, an act or attempted act of physical or sexual violence against the

7

person of another, or a conspiracy to commit any such acts of violence, or any criminal activity of which the United States Attorney for the Western District of Missouri has no knowledge.

The defendant recognizes that the United States' agreement to forego prosecution of all of the criminal offenses with which the defendant might be charged is based solely on the promises made by the defendant in this agreement. If the defendant breaches this plea agreement, the United States retains the right to proceed with the original charges and any other criminal violations established by the evidence. The defendant expressly waives its right to challenge the initiation of the dismissed or additional charges against it if it breaches this agreement. The defendant expressly waives its right to assert a statute of limitations defense if the dismissed or additional charges are initiated against it following a breach of this agreement. The defendant further understands and agrees that, if the Government elects to file additional charges against it following its breach of this plea agreement, it will not be allowed to withdraw its guilty plea.

8. **Preparation of Presentence Report**. The defendant understands the United States will provide to the Court and the United States Probation Office a government version of the offense conduct. This may include information concerning the background, character and conduct of the defendant, including the entirety of its criminal activities. The defendant understands these

Case 2:10-cr-04009-WAK   Document 2   Filed 03/16/10   Page 8 of 18

disclosures are not limited to the count to which it has pleaded guilty. The United States may respond to comments made or positions taken by the defendant or the defendant's counsel, and correct any misstatements or inaccuracies. The United States further reserves its right to make any recommendations it deems appropriate regarding the disposition of this case, subject only to any limitations set forth in this plea agreement. The United States and the defendant expressly reserve the right to speak to the Court at the time of sentencing pursuant to Rule 32(i)(4) of the Federal Rules of Criminal Procedure.

9. **Withdrawal of Plea.** Either party reserves the right to withdraw from this plea agreement for any or no reason at any time prior to the entry of the defendant's plea of guilty and its formal acceptance by the Court. In the event of such withdrawal, the parties will be restored to their pre-plea agreement positions to the fullest extent possible. However, after the plea has been formally accepted by the Court, the defendant may withdraw its plea of guilty only if the Court rejects the plea agreement, or if the defendant can show a fair and just reason for requesting the withdrawal. The defendant understands that, if the Court accepts its plea of guilty and this plea agreement but subsequently imposes a sentence that is outside the defendant's applicable Sentencing Guidelines range, or imposes a sentence that the defendant does not

expect, like or agree with, it will not be permitted to withdraw his plea of guilty.

10. **Agreed Guidelines Applications**. With respect to the application of the Sentencing Guidelines to this case, the parties stipulate and agree as follows:

    a. The Sentencing Guidelines do not bind the Court and are advisory in nature. The Court may impose a sentence that is either above or below the defendant's applicable Guidelines range, provided the sentence imposed is not "unreasonable";

    b. The applicable Guidelines section for the offense of conviction is Chapter Eight of the Sentencing Guidelines, [parts A, B, C, D, and E,] regarding restitution, remedial orders, community service, fines, probation, and special assessment. The defendant understands that the United States Sentencing Guidelines relating to the sentencing of organizations does not apply to the imposition of fines for environmental crimes. See U.S.S.G. § 8C2.1 (Commentary-Background). The defendant understands that the Probation Office and the Court will determine the applicability;

    c. The defendant has admitted its guilt and clearly accepted responsibility for its actions, and has assisted authorities in the investigation or prosecution of its own misconduct by timely notifying authorities of its intention to enter a plea of guilty, thereby permitting the Government to avoid preparing for trial, and permitting the Government and the Court to allocate their resources efficiently. Therefore, it is entitled to a 2-level reduction pursuant to § 3E1.1(b) of the Sentencing Guidelines, and an additional 1-level reduction pursuant to § 3E1.1(b) if applicable;

    d. The defendant understands that the estimate of the parties with respect to the Guidelines computation set forth in the subsections of this paragraph does not bind the Court or the United States Probation Office with respect to the appropriate Guidelines levels. Additionally, the failure of the Court to accept these stipulations will not, as outlined in paragraph 9 of this

plea agreement, provide the defendant with a basis to withdraw its plea of guilty;

e. The United States agrees not to seek an upward departure from the Guidelines or a sentence outside the Guidelines range, and the defendant agrees to not seek a downward departure from the Guidelines or a sentence outside the Guidelines range. The agreement by the parties to not seek a departure from the Guidelines is not binding upon the Court or the United States Probation Office, and the Court may impose any sentence authorized by law, including any sentence outside the applicable Guidelines range that is not "unreasonable";

f. The defendant consents to judicial fact-finding by a preponderance of the evidence for all issues pertaining to the determination of the defendant's sentence, including the determination of any mandatory minimum sentence (including the facts that support any specific offense characteristic or other enhancement or adjustment), and any legally authorized increase above the normal statutory maximum. The defendant waives any right to a jury determination beyond a reasonable doubt of all facts used to determine and enhance the sentence imposed, and waives any right to have those facts alleged in the information. The defendant also agrees that the Court, in finding the facts relevant to the imposition of sentence, may consider any reliable information, including hearsay; and

g. The defendant understands and agrees that the factual admissions contained in paragraph 3 of this plea agreement, and any admissions that it will make during its plea colloquy, support the imposition of the agreed upon Guidelines calculations contained in this agreement.

**11. <u>Effect of Non-Agreement on Guidelines Applications</u>.** The parties understand, acknowledge and agree that there are no agreements between the parties with respect to any Sentencing Guidelines issues other than those specifically listed in paragraph 10 and its subsections. As to any other Guidelines

11

issues, the parties are free to advocate their respective positions at the sentencing hearing.

12. **Change in Guidelines Prior to Sentencing**. The defendant agrees that, if any applicable provision of the Guidelines changes after the execution of this plea agreement, then any request by the defendant to be sentenced pursuant to the new Guidelines will make this plea agreement voidable by the United States at its option. If the Government exercises its option to void the plea agreement, the United States may charge, reinstate or otherwise pursue any and all criminal charges that could have been brought but for this plea agreement.

13. **Government's Reservation of Rights**. The defendant understands that the United States expressly reserves the right in this case to:

    a. oppose or take issue with any position advanced by the defendant at the sentencing hearing which might be inconsistent with the provisions of this plea agreement;

    b. comment on the evidence supporting the charge in the information;

    c. oppose any arguments and request for relief the defendant might advance on an appeal from the sentence imposed, and that the United States remains free on appeal or collateral proceedings to defend the legality and propriety of the sentence actually imposed, even if the Court chooses not to follow any recommendation made by the United States; and

    d. oppose any post-conviction motion for reduction of sentence, or other relief.

12

14.  **Waiver of Constitutional Rights**.  The defendant, by pleading guilty, acknowledges that it has been advised of, understands, and knowingly and voluntarily waives the following rights:

    a.  the right to plead not guilty and to persist in a plea of not guilty;

    b.  the right to be presumed innocent until its guilt has been established beyond a reasonable doubt at trial;

    c.  the right to a jury trial, and at that trial, the right to the effective assistance of counsel;

    d.  the right to confront and cross-examine the witnesses who testify against it;

    e.  the right to compel or subpoena witnesses to appear on its behalf; and

    f.  the right to remain silent at trial, in which case its silence may not be used against it.

The defendant understands that, by pleading guilty, it waives or gives up those rights and there will be no trial.  The defendant further understands that, if it pleads guilty, the Court may ask it questions about the offense to which it pleaded guilty, and if the defendant answers those questions under oath and in the presence of counsel, its answers may later be used against it in a prosecution for perjury or making a false statement.  The defendant also understands that it has pleaded guilty to a felony offense.

15.  **Waiver of Appellate and Post-Conviction Rights**.

    a.  The defendant acknowledges, understands and agrees that, by pleading guilty pursuant to this plea agreement, it waives its right to appeal or collaterally

attack a finding of guilt following the acceptance of this plea agreement, except on grounds of: (1) ineffective assistance of counsel; or (2) prosecutorial misconduct; and

      b. The defendant expressly waives its right to appeal its sentence, directly or collaterally, on any ground except claims of: (1) ineffective assistance of counsel; (2) prosecutorial misconduct; or (3) an illegal sentence. An "illegal sentence" includes a sentence imposed in excess of the statutory maximum, but does *not* include less serious sentencing errors, such as a misapplication of the Sentencing Guidelines, an abuse of discretion, or the imposition of an unreasonable sentence. However, if the United States exercises its right to appeal the sentence imposed as authorized by 18 U.S.C. § 3742(b), the defendant is released from this waiver and may, as part of the Government's appeal, cross-appeal its sentence as authorized by 18 U.S.C. § 3742(a) with respect to any issues that have not been stipulated to or agreed upon in this agreement.

16. **Waiver of FOIA Request**. The defendant waives all of its rights, whether asserted directly or by a representative, to request or receive from any department or agency of the United States any records pertaining to the investigation or prosecution of this case including, without limitation, any records that may be sought under the Freedom of Information Act, 5 U.S.C. § 552, or the Privacy Act of 1974, 5 U.S.C. § 552a.

17. **Waiver of Claim for Attorney's Fees**. The defendant waives all of its claims under the Hyde Amendment, 18 U.S.C. § 3006A, for attorney's fees and other litigation expenses arising out of the investigation or prosecution of this matter.

18. **Defendant's Agreement to Destruction of Biological Evidence**. In accordance with 18 U.S.C. § 3600A(c)(2), the

14

defendant knowingly and voluntarily waives its right to request DNA testing of any biological evidence which may have been obtained or seized by law enforcement in its case. The defendant agrees that all biological evidence which may have been obtained or seized may be destroyed by law enforcement authorities.

19. **Defendant's Breach of Plea Agreement**. If the defendant commits any crimes, violates any conditions of release, or violates any term of this plea agreement between the signing of this plea agreement and the date of sentencing, or fails to appear for sentencing, or if the defendant provides information to the Probation Office or the Court that is intentionally misleading, incomplete or untruthful, or otherwise breaches this plea agreement, the United States will be released from its obligations under this agreement. The defendant, however, will remain bound by the terms of the agreement, and will not be allowed to withdraw its plea of guilty.

The defendant also understands and agrees that, in the event it violates this plea agreement, all statements made by it to law enforcement agents subsequent to the execution of this plea agreement, any testimony given by it before a grand jury or any tribunal, or any leads from such statements or testimony, shall be admissible against it in any and all criminal proceedings. The defendant waives any rights that it might assert under the United States Constitution, any statute, Rule 11(f) of the Federal Rules

15

of Criminal Procedure, Rule 410 of the Federal Rules of Evidence, or any other federal rule that pertains to the admissibility of any statements made by it subsequent to this plea agreement.

20. **Defendant's Representations**. The defendant acknowledges that it has entered into this plea agreement freely and voluntarily after receiving the effective assistance, advice and approval of counsel. The defendant acknowledges that it is satisfied with the assistance of counsel, and that counsel has fully advised it of its rights and obligations in connection with this plea agreement. The defendant further acknowledges that no threats or promises, other than the promises contained in this plea agreement, have been made by the United States, the Court, its attorney, or any other party to induce it to enter its plea of guilty.

21. **No Undisclosed Terms**. The United States and the defendant acknowledge and agree that the above stated terms and conditions, together with any written supplemental agreement that might be presented to the Court *in camera*, constitute the entire plea agreement between the parties, and that any other terms and conditions not expressly set forth in this agreement or any written supplemental agreement do not constitute any part of the parties' agreement, and will not be enforceable against either party.

22. **Standard of Interpretation**. The parties agree that, unless the constitutional implications inherent in plea agreements require otherwise, this plea agreement should be interpreted

16

according to general contract principles, and the words employed are to be given their normal and ordinary meanings. The parties further agree that, in interpreting this agreement, any drafting errors or ambiguities are not to be automatically construed against either party, whether or not that party was involved in drafting or modifying this agreement.

**Beth Phillips**
United States Attorney

By _Lawrence E. Miller_

Dated ___3/16/10___

**Lawrence E. Miller**
Assistant United States Attorney
Missouri Bar No. 39531

17

As the owner/organizer of Midwest Container Reconditioning, LLC (MCR), I am authorized to enter into this plea agreement on behalf of MCR. I have consulted with the attorneys who represent MCR and fully understand all of its rights with respect to the offense charged in the information. Further, I have consulted with said attorneys and fully understand MCR's rights with respect to the provisions of the Sentencing Guidelines. I have read this plea agreement and carefully reviewed every part of it with MCR's attorneys. On behalf of MCR, I understand this plea agreement, and voluntarily agree to it on behalf of MCR.

Dated ___3|16|10___          _____Steven B. Hopper_____
                             Steven B. Hopper, Owner/Organizer,
                             for      Midwest      Container
                             Reconditioning, LLC
                             Defendant
                                      and Managing
                                      Member SBH

We are defendant MCR's attorneys. We have fully explained to MCR's owner/organizer the rights of MCR with respect to the offense charged in the information. Further, we have reviewed with MCR's owner/organizer the provisions of the Sentencing Guidelines which might apply in this case. We have carefully reviewed every part of this plea agreement with MCR's owner/organizer. To our knowledge, MCR's decision to enter into this plea agreement is an informed and voluntary one.

Dated _____       _____
                             David A. Shorr
                             Attorney for Defendant
                             Midwest Container Reconditioning, LLC

Dated __3/16/2010__          _____Jean Paul Bradshaw_____
                             Jean Paul Bradshaw
                             Attorney for Defendant
                             Midwest Container Reconditioning, LLC

18